PRISCILLA WILLIAMS, KIMBERLY )
NAPIER, PENNY WOLFE and SANDY )
WIZZARD individually and on behalf of )     Civil No. 3:20-cv-0242
all others similarly situated; )
                         )
                         )
               Plaintiff, )     JURY TRIAL DEMANDED
     v. )
                         )
THE CHARLOTTE-MECKLENBURG )     COLLECTIVE and CLASS
HOSPITAL AUTHORITY d/b/a )     ACTION COMPLAINT
ATRIUM HEALTH, INC. f/k/a )
Carolinas HealthCare System, )
                         )
             Defendant. )

## COMPLAINT

Plaintiffs Priscilla Williams, Kimberly Napier, Penny Wolfe and Sandy Wizzard, (collectively "Plaintiffs"), individually and on behalf of similarly situated employees, bring this lawsuit against Defendant Mecklenburg Hospital Authority dba Atrium Health ("Atrium" or "Defendant") and allege as follows.

## <u>OVERVIEW</u>

1.    Plaintiff Priscilla Williams, Kimberly Napier and Penny Wolfe bring this action against Atrium, on behalf of themselves individually, and others similarly situated current and former employees, for discrimination, harassment and retaliation based on age in violation of the Age Discrimination in Employment Act of 1967

("ADEA"), 29 U.S.C. § 621, et seq. (as amended) ("ADEA Collective"). They seek legal, equitable and declaratory relief on behalf of themselves and others similarly situated.

2.    Plaintiffs Priscilla Williams and Sandy Wizzard bring this action against Atrium, on behalf of themselves individually, and others similarly situated current and former employees, for discrimination, harassment and retaliation based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§2000e et seq. ("Title VII Class"). They seek legal, equitable and declaratory relief on behalf of themselves and others similarly situated.

3.    Plaintiffs Priscilla Williams and Penny Wolfe seek relief on behalf of themselves and others similarly situated for wrongful discharge in violation of North Carolina public policy and the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1, *et seq*. ("WDPP Class").

4.    Plaintiff Priscilla Williams brings this action, individually, against Atrium for discrimination based on disability and/or perceived disability and failure to accommodate, in violation of Title I of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12111, *et seq*. and retaliation under the Family Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA").

## PARTIES

5.    Plaintiff Priscilla Williams ("Williams") is a female, African American citizen, age 49, born in 1970, and resident of Mecklenburg County, North Carolina. She is a

former employee of Atrium who was employed as a Nurse Aid/Healthcare Technician from January 18, 1999 to February 6, 2019. She suffered race, age and disability discrimination, harassment, and retaliation which included, but was not limited to, termination. She is a member of and representative for the ADEA collective, the Title VII Class and the WDPP Class. A written consent form for Williams is attached hereto as Exhibit A, pursuant to 29 U.S.C. § 216(b).

6.  Plaintiff Sandy Wizzard ("Wizzard") is a female, African American citizen and a resident of Mecklenburg County, North Carolina. She is a current employee of Atrium who began working for Atrium as a Healthcare Technician in October 2008. She suffered race discrimination, harassment, and retaliation which included, but was not limited to, a significant pay cut. She is a member of and representative of the Title VII Class.

7.  Plaintiff Kimberly Napier ("Napier") is a female citizen, age 45, born October 21, 1974, and a resident of Mecklenburg County, North Carolina. She is a current employee of Atrium who began working as a Registered Nurse on September 24, 2001. She suffered age discrimination, harassment, and retaliation which included, but was not limited to, a demotion. She is a member of and representative of the ADEA Collective. A written consent form for Napier is attached hereto as Exhibit B, pursuant to 29 U.S.C. § 216(b).

8.  Plaintiff Penny Wolfe ("Wolfe") is a female citizen and resident of Mecklenburg County, North Carolina. She is a former employee of Atrium who worked as a Registered Nurse from 1992 to 2019. She suffered harassment and retaliation which

included, but was not limited to, constructive discharge. She is a member of and representative of the ADEA Collective and WDPP Class. A written consent form for Wolfe is attached hereto as Exhibit C, pursuant to 29 U.S.C. § 216(b).

9.    Defendant Charlotte-Mecklenburg Hospital Authority dba Atrium Health, Inc. is a nonprofit corporation, organized under the laws of the State of North Carolina, with its principal office and place of business located at 1000 Blythe Boulevard, Charlotte, North Carolina, 28203.

10.   Atrium is Charlotte's largest healthcare provider and employer. It also operates hospitals and healthcare facilities in North Carolina, South Carolina, and Georgia, with approximately 65,000 total employees.

11.   This case is brought and may be maintained as a class action. Questions of law or fact common to class members predominate over any questions solely affecting individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Class action treatment will allow a large number of similarly situated class members to simultaneously and efficiently prosecute their common claims in a single forum without the needless duplication of effort and expense that numerous individual actions would entail.

12.   Because the monetary amounts owed to many individual class members are likely to be relatively small, the burden and expense of individual litigation would make it difficult, if not impossible, for individual class members to seek and obtain relief. A class action will also serve the important public interest of permitting class

members harmed by Atrium's unlawful practices to effectively pursue recovery of the sums owed to them.

## JURISDICTION AND VENUE

13. This action arises under federal statutes including Title VII, ADEA, ADAAA and FMLA. This Court has jurisdiction over this matter pursuant to 28 U.S.C.§1331 because the claims brought herein constitute a federal question under the laws of the United States.

14. This Court can assume supplemental jurisdiction over the state law claims of Plaintiffs Williams and Wolfe pursuant to 28 U.S.C. § 1367 because the state law claims are based on the same operative facts as the claims presented under the claims under Title VII, ADEA, ADAAA and FMLA.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiffs were hired to work in this District and Atrium conducts business in this District.

16. At all relevant times, Atrium was an "employer" within the meaning of Title VII, 42 U.S.C.§2000e(b); ADAAA, 42 U.S.C. § 12111(5); ADEA, 29 U.S.C. § 630(b); FMLA 29 U.S.C. § 2611(4)(A) and all other applicable state and federal laws alleged herein. At all relevant times, Defendant employed 500 or more employees.

17. At all relevant times, Plaintiffs were "employees" as defined by 42 U.S.C.§2000e(f); ADAAA, 42 U.S.C. § 12111(4); ADEA, 29 U.S.C. § 630(f); FMLA 29 U.S.C. § 2611(2)(A) and all other applicable state and federal laws alleged herein.

## ADMINISTRATIVE EXHAUSTION

18.    Plaintiffs satisfied their obligations to exhaust their administrative remedies by timely filing Charges of Discrimination against Atrium with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination, harassment and/or retaliation.

    a.    Plaintiff Williams: On January 24, 2020, the EEOC issued a Notice of Right to Sue on Williams' race and age discrimination and harassment claims, as well as her disability discrimination claim. Williams timely brings this action within ninety (90) days of her receipt thereof.

    b.    Plaintiff Wizzard: On January 24, 2020, the EEOC issued a Notice of Right to Sue on Wizzard's race discrimination and harassment claims. Wizzard timely brings this action within ninety (90) days of her receipt thereof.

    c.    Plaintiff Napier: On January 24, 2020, the EEOC issued a Notice of Right to Sue on Napier's age discrimination and harassment claims, as well as her retaliation claim. Napier timely brings this action within ninety (90) days of her receipt thereof.

    d.    Plaintiff Wolfe: On January 24, 2020, the EEOC issued a Notice of Right to Sue on Wolfe's age discrimination and harassment claims, as well as her retaliation claim. Wolfe timely brings this action within ninety (90) days of her receipt thereof.

19.    Plaintiffs have satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## FACTS

20. At all relevant times, Plaintiffs were employed by Atrium in the Pediatric Cancer Unit (the "Unit") at Atrium Health Levine Children's Hospital working in the capacity of Nurses, Registered Nurses or Healthcare Technicians.

21. Plaintiffs worked for decades without incident until Kerry Bratcher ("Bratcher") became the Nurse Manager on the Unit.

22. Shortly after her arrival in early 2017, she informed several individuals, including Plaintiff Napier, that she wanted to get rid of older and African American employees on the Unit. Bratcher began targeting older, African American employees, and telling others they could "thank her" when older, African Americans were terminated or forced out.

23. After hearing Bratcher make such comments, Napier complained to Robin Nievaard ("Nievaard"), Director of Nursing Services, about Bratcher's comments and conduct. Nievaard informed Napier that Bratcher was "not going anywhere" and that she was basically "untouchable" and complaints about her would go nowhere.

24. Napier also advised an older, African American employee on the Unit to go to Human Resources if they felt discriminated against. After this, Napier was counseled for telling the older, African American employee to go to HR. Napier had never been counseled before she started complaining about Bratcher.

25. In April of 2017, Bratcher stated in a meeting that she wanted to "change the face" of Atrium's Healthcare Technicians (who were mostly older, African American females) and hire all new Healthcare Technicians.

26. Bratcher instructed other employees to "write up" certain older, African American employees such as Willisene Sloan, for anything they could in order to terminate them. Bratcher stated she wanted to "performance out" Sloan.

27. In May of 2017, Napier again complained to Nievaard about Bratcher's comments and behavior. Nievaard again stated that Bratcher was not going anywhere. Atrium did not start an investigation based on Napier's complaints about Bratcher.

28. A few days later, Bratcher again counseled Napier about a purported incident, which did not occur as Bratcher alleged. Again, Napier had never been counseled before she started complaining about Bratcher.

29. A few days after that, Bratcher gave Napier a verbal warning for an alleged "pattern of unprofessional behavior." The next day, in a meeting Bratcher was extremely aggressive and used profanity. During the meeting, she broke a pen and almost hit Napier in the eye when she did.

30. After the meeting, Napier complained to Beatriz Rodriquez in HR about the incident, but no investigation was commenced.

31. In June of 2017, Bratcher suggested to Napier that maybe she should step down from her role as CS. She also suggested an older employee was "too tired" and should look for another job.

32. In August of 2017, Bratcher spoke to Penny Wolfe about stepping down as a Clinical Supervisor ("CS"). Bratcher also stated in a meeting that she was not going to give Sandy Wizzard (African American) or Yvette Sturdivant (both older and

African Americans) the positions they wanted because she hoped to get rid of them both.

33.    In December of 2017, Bratcher gave Napier a false negative annual evaluation which Napier refused to sign.

34.    In January of 2018, Napier, Williams and several other older and/or African American employees complained as a group to Angie Houser in HR about the discrimination, harassment and retaliation by Bratcher. They were told an apology would be forthcoming.

35.    Instead, two weeks later, Houser was replaced. Rodriquez was supposed to continue with the investigation but did not. Bratcher's conduct escalated and became worse.

36.     In February of 2018, Bratcher again gave Napier written counseling for an incident that did not occur.

37.    In March of 2018, Napier again complained to Nievaard HR about Bratcher's discrimination, harassment and retaliation. Nievaard reiterated that Bratcher was not going anywhere and it did not matter what anyone said about her; it would not matter.

38.    In May of 2018, Napier tried to complain to the HR Resolution Committee about Bratcher, but the Committee would not listen. Napier was essentially forced to step down as a CS.

39.    In August of 2018, an older nurse with over 20 years of experience in the Unit, applied for the CS position and was denied. Instead, Atrium hired a much younger

female for one CS position and a male for the other. The younger female has numerous complaints about her, but she remains in the position.

40. In November/December 2018, Bratcher told multiple younger, newer nurses that she is wanting to "get rid of all the older nurses." She also stated she is much happier with her "younger staff".

41. Bratcher told a younger nurse that she was currently working on getting rid of Penny Wolfe. She was targeting Wolfe just like she targeted Napier and other older and/or African American employees.

42. In January/February 2019, Napier and others filed a claim for age and race discrimination with corporate compliance.

43. Around the same time, Bratcher moved a very sick patient from an older primary nurse to a younger one because she said it thought it would help Atrium get a particular accreditation it was seeking at the time.

44. After the corporate compliance complaint, Bianca Stover from HR did an investigation and took time to meet with many victims and witnesses and record all their information. She assured them something would be done and apologized that they have been dealing with this for over two years.

45. However, within a few weeks of her doing her investigation, Stover was transferred to another unit. Rodriguez was supposed to follow up on the investigation but did not.

46. Williams, who had been out on FMLA since August 2018, scheduled to return to work on February 6, 2019 when her FMLA leave expired.

47.     On February 4, 2019, Williams contacted Bratcher to see what was needed regarding her imminent return to work on February 6, 2019. Bratcher gave her the run-around and told her to contact HR. Williams contacted HR and stated she had a doctor appointment on February 5, 2019 to get final approval to return to work on February 6, 2019, with any needed restrictions.

48.     On February 5, 2019, Williams was released to return to work on February 6, 2019 with certain restrictions. Rather than return Williams to work at the end of her FMLA leave, Atrium unlawfully terminated her on February 4, 2019.

49.     In February of 2019, Wolfe was constructively discharged when she was forced into early retirement due to Bratcher's harassment and targeting. In March of 2019, Nievaard also left Atrium.

50.     In March of 2019, Bratcher mocked and humiliated Napier during a conference call in which she participated remotely. Bratcher asked other staff members if there was a mute button to shut Napier up and she used hand motions as if she were strangling the phone whenever Napier spoke. When Napier was accidentally disconnected, Bratcher said "Thank God."

51.     In March of 2019, Napier was deemed ineligible for a 10% raise due to the history of retaliatory discipline by Bratcher.

52.     During that same month, Napier was denied a 10% raise that all nurses with over 10 years oncology experience receive. Napier was deemed ineligible because Bratcher had given her the false "needs improvement" rating on her year-end review.

53. In May of 2019, Napier and another employee spoke to April Carroll, the new Director of Nursing, about Bratcher's issues over the past 3 years with discrimination, harassment and retaliation. Carroll stated that she could not do anything about the past but if staff could give Bratcher a fresh start, Carroll would try to make Bratcher a better manager. When Napier explained how badly so many were affected emotionally and financially, Carroll stated they just need to move forward and give Bratcher respect and a fresh start.

54. After Plaintiffs filed their EEOC charges, Bratcher began ignoring Napier and Wizzard and refusing to provide instructions or communicate regarding their job duties. When she did speak to them, it was in a demeaning and unprofessional tone and manner.

55. In December of 2019, Bratcher wrote Wizzard up for a fabricated offense. It was the first time Wizzard had been written up in the decade she had been employed by Defendant. Wizzard disputed the write-up and told Atrium she believed it was in retaliation for complaining about race discrimination and filing her EEOC charge. As a result of the write-up, Wizzard did not receive her annual bonus and was unable to transfer to another position she sought because she had a recent write-up.

56. Within the past six months, Bratcher caused another African American nurse to quit due to the hostile work environment created by Bratcher. In this instance, Bratcher "counseled" the RN about a Facebook post that was not work-related and involved no other HIPAA or other violations. Bratcher targeted this RN and mistreated her for several months.

57.     In the past few months in 2020, Atrium, through, Bratcher, terminated yet another older Healthcare Technician over age 40. She was purportedly terminated for "performance" reasons after Bratcher wrote her up numerous times for false reasons.

58.     Recently, Bratcher publicly humiliated an older nurse she had previously denied a promotion to. Bratcher was recording other nurses doing a Tik-Tok dance to post on social media while the nurse was trying to pass through the hallway. Bratcher (who did not invite any older nurses to participate in her Tik-Tok dance) said, "Lisa you can just stand there with your disgusting look."

59.     Currently, the Unit is staffed by very few African Americans and/or older employees.

<b><u>CLASS AND COLLECTIVE ACTION ALLEGATIONS</u></b>

**ADEA Collective Action**

60.     Plaintiffs Williams, Napier and Wolfe bring the First, Second and Third Counts in this action as an "opt-in" collective action pursuant to the collective action provision of 29 U.S.C. § 216(b) on behalf of themselves and on behalf of the following class of persons: All persons who were or are employed by Atrium and who were discriminated against, harassed and/or retaliated against on the basis of age ("ADEA Collective").

61.     The proposed collective action brought by Plaintiffs Williams, Napier and Wolfe on behalf of themselves and other current and former employees of Atrium who were discriminated against, harassed and/or retaliated against by Atrium on the basis of

age. Atrium's wrongful willful and intentional conduct effected a grossly disparate and adverse impact on Atrium's current and former workers who were over the age of 40, in violation of the ADEA.

62. The ADEA claims may be pursued by those who opt-in to this case, pursuant to who elect to opt-in to this action pursuant to the collective action provision of 29 U.S.C. § 216(b).

63. Plaintiff Williams, Napier and Wolfe, individually and on behalf of members of the ADEA Collective, seek relief on a collective basis challenging, among other ADEA violations, adverse employment actions based on age. The number and identity of other Plaintiffs yet to opt-in and consent to be party Plaintiff may be determined from Defendant's records, and potential class members may easily and quickly be notified of the pendency of this action.

64. Other employees have been victimized by this pattern, practice and policy, which are willful violations of the ADEA. Some of these employees have worked with Plaintiffs and have reported that they were discriminated against, harassed and/or retaliated against on the basis of age. Thus, from their observations and discussions with these employees, Plaintiffs Williams, Napier and Wolfe are aware that the illegal practices or policies of Atrium have been imposed on the ADEA Collective.

65. The members of the ADEA Collective are all over 40 years old and were all discriminated against, harassed and/or retaliated against on the basis of age. These employees are victims of Atrium's unlawful discrimination practices and are

similarly situated to Plaintiffs Williams, Napier and Wolfe in terms of job duties, pay provisions, and employment practices.

66.     Atrium's age discrimination results from generally applicable, systematic policy and practice and is not dependent on the personal circumstances of the members of the ADEA Collective. Thus, the experiences of Plaintiff's Williams, Napier and Wolfe are typical of the experiences of the members of the ADEA Collective.

67.     The specific job titles or precise job requirements of the various members of the ADEA Collective does not prevent collective treatment. All of the ADEA Collective members, regardless of their precise job requirements or rates of pay, are entitled to, among other damages, back pay, front pay, and emotional distress damages. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

**Title VII Class**

68.     Plaintiffs Williams and Wizzard bring Counts IV, V, and VI on behalf of the Opt-Out Title VII Class pursuant to Federal Rule of Civil Procedure 23, defined as follows: All persons who were or are employed by Atrium and who were discriminated against, harassed and/or retaliated against on the basis of race ("Title VII Class").

a.     **Numerosity**: The members of the Title VII Class are so numerous that joinder of all members is impracticable. The exact number of the members of the Title VII Class can be determined by reviewing Atrium's records. Plaintiffs

Williams and Wizzard are informed and believe, and thereon allege, that there are hundreds of individuals in the Title VII Class.

b. **Commonality**: There is a well-defined community of interest in the questions of law and fact affecting the Title VII Class as a whole. The questions of law and fact common to the Title VII Class predominate over any questions solely affecting individual members of the action.  Among the common questions of law and fact are whether Atrium discriminated against Plaintiffs and the Title VII Class on the basis of race, whether Atrium created a hostile work environment for Plaintiffs and the Title VII Class on the basis of race and whether Atrium retaliated against Plaintiffs and the Title VII Class for complaining about race discrimination. Common questions of law and fact as to causation and pretext also exist.

c. **Typicality**: The claims of Plaintiffs Williams and Wizzard are typical of the other Title VII Class members.  Plaintiffs Williams and Wizzard, like the other members of the Title VII Class, discriminated, harassed and retaliated against on the basis of their race.

d. **Adequacy:** Plaintiffs Williams and Wizzard will fairly and adequately protect the interests of the Title VII Class and have retained counsel that is experienced and competent in class action and employment litigation.  Plaintiffs Williams and Wizzard have no interests that are contrary to, or in conflict with, members of the Title VII Class.

**WDPP Class**

69.     Plaintiffs Williams and Wolfe bring Count VI on behalf of the Opt-Out Wrongful Discharge under North Carolina state law Sub-Class pursuant to Federal Rule of Civil Procedure 23, defined as follows: former employees of Atrium who were terminated in violation of North Carolina public policy ("WDPP Class").

a.     **Numerosity**: The members of the WDPP Class are so numerous that joinder of all members is impracticable. The exact number of the members of the WDPP Class can be determined by reviewing Atrium's records. Plaintiffs Williams and Wolfe are informed and believe, and thereon allege, that there are hundreds of individuals in the WDPP Class.

b.     **Commonality**: There is a well-defined community of interest in the questions of law and fact affecting the WDPP Class as a whole. The questions of law and fact common to the NC State Sub-Class predominate over any questions solely affecting individual members of the action. Among the common questions of law and fact are whether Plaintiffs and the WDPP Class were wrongfully discharged in violation of Title VII and/or the ADEA. Common questions of law and fact also exist as to causation and pretext.

c.     **Typicality**: The claims of Plaintiffs Williams and Wolfe are typical of the other WDPP Class members. Plaintiffs Williams and Wolfe, like the other members of the WDPP Class, were wrongfully discharged in violation of public policy because their termination was based on race, age and/or retaliation.

d.     **Adequacy:** Plaintiffs Williams and Wolfe will fairly and adequately protect the interests of the WDPP Class and have retained counsel that is experienced and competent in class action and employment litigation.  Plaintiffs Williams and Wolfe have no interests that are contrary to, or in conflict with, members of the WDPP Class.

**COUNT I**
**Age Discrimination – Violation of ADEA**
**(By Plaintiffs Williams, Napier and Wolfe and the ADEA Collective)**

70.     Plaintiffs Williams, Napier and Wolfe reallege and incorporate by reference all allegations in all preceding paragraphs.

71.     Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective were fully qualified for their positions.

72.     Plaintiffs Williams, Napier and Wolfe are all members of the proposed ADEA Collective and are age 40 and above.

73.     Atrium treated Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective less favorably than substantially younger employees, by terminating their employment, among other unlawful actions, which disparately affected employees over the age of 40.  Atrium treated employees under the age of 40 much more favorably than Plaintiffs Williams, Napier, and Wolfe and members of the ADEA collective. Atrium replaced Plaintiff Williams and members of the proposed Age Collective with substantially younger employees.

74.     Atrium's conduct was willful, wanton, and malicious, as evidenced by the fact that Kerry Bratcher, the nurse manager, repeatedly stated she wanted to get rid of all the older and African American nurses on the Unit.

75.     When Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective complained to Human Resources about Bratcher's statements and conduct, they were told that Bratcher was "untouchable" and "was not going anywhere" and that they would have to tolerate her behavior, including the blatant discrimination.

76.     As a direct and proximate result of the willful, wanton, wrongful and unlawful actions of Atrium, Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective suffered injury and damage for which they are entitled to compensation pursuant to the ADEA.

77.     Because of Atrium's unlawful conduct, Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective are entitled to favorable judgment, substantial economic damages, liquidated damages, injunctive relief, and attorney fees, in an amount to be proven at trial.

**COUNT II**
**Harassment/Hostile Work Environment – Violation of ADEA**
**(By Plaintiffs Williams, Napier, Wolfe and the ADEA Collective)**

78.     Plaintiffs Williams, Napier and Wolfe reallege and incorporate by reference all allegations in all preceding paragraphs.

79.     Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective were fully qualified for their positions.

80. Plaintiffs Williams, Napier and Wolfe are all members of the proposed ADEA Collective and are age 40 and above.

81. In doing the acts alleged herein, Atrium created a hostile and abusive work environment for employees over 40 years of age by allowing Williams, Napier and Wolfe and the ADEA Collective to be subjected to a pervasive age-motivated harassment by Bratcher, and failed to take corrected measures to eliminate a hostile work environment that employees older than 40 years old were subjected to on a regular basis.

82. Plaintiffs Williams, Napier and Wolfe and the ADEA Collective were subjected to heightened scrutiny and were singled out on the basis of their age. They were held to a different standard from younger employees to such an extreme degree that it created a hostile work environment.

83. Plaintiffs Williams, Napier, Wolfe and other employees, made Atrium award of Bratcher's behavior through repeated complaints of her behavior and filing of EEOC charges. However, Atrium failed to promptly correct Bratcher's and even told complaining individuals that Bratcher was "untouchable" and "wasn't going anywhere" despite her behavior.

84. Atrium is liable for the acts of Bratcher performed within the scope of and during her employment with Atrium and Atrium had notice of such acts.

85. As a direct and proximate result of the willful, wanton, wrongful and unlawful actions of Atrium, Plaintiffs Williams, Napier and Wolfe and members of the

proposed ADEA Collective suffered injury and damage for which they are entitled to compensation pursuant to the ADEA.

86. Because of Atrium's unlawful conduct, Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective are entitled to favorable judgment, substantial economic damages, liquidated damages, injunctive relief, and attorney fees, in an amount to be proven at trial.

## COUNT III
## Retaliation – Violation of ADEA
### (By Plaintiffs Williams, Napier, Wolfe and the ADEA Collective)

87. Plaintiffs Williams, Napier and Wolfe reallege and incorporate by reference all allegations in all preceding paragraphs.

88. In doing the acts alleged herein, Atrium retaliated against Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective in violation of the ADEA.

89. Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective were engaged in the protected activity of reasonably opposing practices they reasonably believed constituted unlawful race and/or age discrimination.

90. Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective genuinely and in good faith believed that Atrium was discriminating based on race and/or age, and their beliefs were reasonable.

91. Atrium was aware that Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective were engaged in a protected activity.

92. Atrium took adverse employment actions against Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective, including but not limited to, false write ups, creating a hostile work environment and/or termination.

93. The adverse employment actions taken by Atrium were causally and temporally linked to the engagement in protected activity by Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective.

94. As a direct result of said conduct, Plaintiffs Williams, Napier and Wolfe and members of the proposed ADEA Collective have suffered lost past and future wages and job benefits and have suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

**COUNT IV**
**Race Discrimination – Violation of Title VII**
**(By Plaintiffs Williams, Wizzard and the Title VII Class)**

95. Plaintiffs Williams and Wizzard reallege and incorporate by reference all allegations in all preceding paragraphs.

96. Plaintiffs Williams and Wizzard and members of the proposed Title VII Class are African American and thus members of a protected class based on their race.

97. Atrium, through its agents, employees, and supervisors, engaged in unlawful discrimination against Plaintiffs Williams and Wizzard and members of the proposed Title VII Class based on race.

98. Bratcher, the supervisor of Plaintiffs Williams and Wizzard and members of the proposed Title VII Class, was Caucasian.

99. Atrium had knowledge of and ratified the acts of unlawful race discrimination against Plaintiffs Williams and Wizzard and members of the proposed Title VII Class.

100. There is compelling evidence of willful and intentional discrimination.

101. A causal connection exists between protected activities of Plaintiffs Williams and Wizzard and members of the proposed Title VII Class, and the adverse employment actions taken against them.

102. To the extent Atrium purports to have a legitimate, non-discriminatory reasons for taking adverse actions against Plaintiffs Williams and Wizzard and members of the proposed Title VII Class, such reasons are pretexts for the true reasons which are her race, as described herein.

103. Atrium's conduct, as described above, was without justification or excuse, is reprehensible, and occurred despite the efforts of Plaintiffs Williams and Wizzard and members of the proposed Title VII Class to prevent, halt and reverse the discrimination. As a direct and proximate result of Atrium's unlawful conduct, Plaintiffs Williams and Wizzard and members of the proposed Title VII Class are now and will continue to be unlawfully deprived of income in the form of wages, compensation, and other monetary and non-monetary benefits due to them, in amounts to be proven at trial.

104. As a result, Plaintiffs Williams and Wizzard and members of the proposed Title VII are entitled to recover from Atrium, damages to be proven at trial, including consequential, general, special, punitive and compensatory damages; injunctive

relief to deter similar conduct in the future, back pay; front pay; and damages for emotional distress.

## COUNT V
### Race Harassment/Hostile Work Environment – Violation of Title VII
### (By Plaintiffs Williams, Wizzard and the Title VII Class)

105. Plaintiffs Williams and Wizzard reallege and incorporate by reference all allegations in all preceding paragraphs.

106. Plaintiffs Williams, Wizzard and members of the proposed Title VII Class were fully qualified for their positions.

107. In doing the acts alleged herein, Atrium created a racially hostile and abusive work environment by allowing Plaintiffs Williams, Wizzard and the Title VII Class to be subjected to a pervasive racially motivated harassment by Bratcher, and failed to take corrected measures to eliminate a racially motivated hostile work environment that Plaintiffs were subjected to on a regular basis.

108. Plaintiffs Williams, Wizzard and the Title VII Class were subjected to heightened scrutiny and were singled out on the basis of race. They were held to a different standard from other employees of a different race to such an extreme degree that it created a hostile work environment.

109. Plaintiffs Williams, Wizzard and other employees, made Atrium award of Bratcher's behavior through repeated complaints of her behavior and filing of EEOC charges. However, Atrium failed to promptly correct Bratcher's and even told complaining individuals that Bratcher was "untouchable" and "wasn't going anywhere" despite her behavior.

110. Atrium is liable for the acts of Bratcher performed within the scope of and during her employment with Atrium and Atrium had notice of such acts.

111. Atrium's conduct, as described above, was without justification or excuse, is reprehensible, and occurred despite the efforts of Plaintiffs Williams and Wizzard and members of the proposed Title VII Class to prevent, halt and reverse the discrimination. As a direct and proximate result of Atrium's unlawful conduct, Plaintiffs Williams and Wizzard and members of the proposed Title VII Class are now and will continue to be unlawfully deprived of income in the form of wages, compensation, and other monetary and non-monetary benefits due to them, in amounts to be proven at trial.

112. As a result, Plaintiffs Williams and Wizzard and members of the proposed Title VII are entitled to recover from Atrium, damages to be proven at trial, including consequential, general, special, punitive and compensatory damages; injunctive relief to deter similar conduct in the future, back pay; front pay; and damages for emotional distress.

## COUNT VI
### Retaliation – Violation of Title VII
### (By Plaintiffs Williams, Wizzard and the Title VII Class)

113. Plaintiffs Williams and Wolfe reallege and incorporate by reference all allegations in all preceding paragraphs.

114. In doing the acts alleged herein, Atrium retaliated against Plaintiffs Williams and Wizzard and members of the proposed Title VII Class in violation of Title VII.

115.    Plaintiffs Williams and Wizzard and members of the proposed Title VII Class were engaged in the protected activity of reasonably opposing practices they reasonably believed constituted unlawful race and/or age discrimination.

116.    Plaintiffs Williams and Wizzard and members of the proposed Title VII Class genuinely and in good faith believed that Atrium was discriminating based on race and/or age, and their beliefs were reasonable.

117.    Atrium was aware that Plaintiffs Williams and Wizzard and members of the proposed Title VII Class were engaged in a protected activity.

118.    Atrium took adverse employment actions against Plaintiffs Williams and Wizzard and members of the proposed Title VII Class, including but not limited to, false write ups, creating a hostile work environment and/or termination.

119.    The adverse employment actions taken by Atrium were causally and temporally linked to the engagement in protected activity by Plaintiffs Williams and Wizzard and members of the proposed Title VII Class.

120.    As a direct result of said conduct, Plaintiffs Williams and Wizzard and members of the proposed Title VII Class have suffered lost past and future wages and job benefits and have suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

## COUNT VII
## Wrongful Discharge in Violation of Public Policy - Violation of Title VII
## (By Plaintiffs Williams, Wolfe and the WDPP Class)

121.    Plaintiffs Williams and Wolfe realleges and incorporates by reference all allegations in all preceding paragraphs.

122.    Atrium employed at least fifteen (15) employees at all relevant times.

123.    Atrium violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1 (North Carolina's Equal Employment Practices Act) by terminating Plaintiffs Williams and Wolfe and members of the proposed WDPP Class based on race and/or age and/or in retaliation for complaining about race and/or age discrimination.

124.    Atrium violated the public policy by terminating/constructively terminating Plaintiffs Williams and Wolfe and members of the proposed WDPP Class after they exercised their rights and in good faith opposed what they viewed as injurious conduct as set forth in the paragraphs above.

125.    As an actual, proximate, and foreseeable consequence of Atrium's conduct, Plaintiffs Williams and Wolfe and members of the proposed WDPP Class suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

126.    Atrium's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for the rights of Plaintiffs Williams and Wolfe and the rights of the WDPP Class. As a result of Atrium's conduct, Plaintiffs

Williams and Wolfe and the WDPP Class are entitled to recover punitive damages in an amount to be determined at trial.

127. Atrium's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## COUNT VIII
### Violation of ADAAA
### (By Plaintiff Williams individually)

128. Plaintiff Williams realleges and incorporates by reference all allegations in all preceding paragraphs.

129. At all relevant times, Plaintiff Williams suffered from a disability related to a shoulder injury that substantially limited her major life activities.

130. Williams started a leave under the FMLA on August 6, 2018 due to this disabling condition. Her FMLA leave was scheduled to expire on February 6, 2019.

131. Williams contacted her supervisor on February 4, 2019 to see what was needed to return to work and to get her schedule. She was told she was not on the schedule for February 6, 2019 and was advised to contact the Human Resources Department.

132. Williams contacted HR and stated she had two doctor appointments on February 5, 2019 to get final approval to return to work, with any needed restrictions.

133. On February 5, 2019, Williams was released to return to work on February 6, 2019 with the following restrictions: no lifting greater than 10 lbs., no pushing or pulling greater than 10 lbs., and lifting over 2 pounds above shoulder level.

134. Williams is a qualified individual able to perform the essential duties of her position, she was capable of completing her assignments with a reasonable accommodation for her minimal restrictions.

135. Atrium terminated Williams before her leave ended and without engaging in any interactive process to determine if her restrictions could be reasonably accommodated.

136. In doing the acts alleged herein, Atrium discriminated against Williams on the basis of a disability or perceived disability.

137. As a direct and proximate result of Atrium's unlawful conduct, Williams is now and will continue to be unlawfully deprived of income in the form of wages, compensation, monetary and non-monetary benefits due to her, and medical and other expenses.

138. As a result, Williams is entitled to recover from Atrium damages in an amount to be proved at trial, including consequential, general, special, compensatory damages such as back pay, front pay, emotional distress damages, pre- and post-judgment interest, reasonable attorney's fees and costs, as well as injunctive relief to deter similar conduct in the future.

139. Atrium's conduct, as described herein, was outrageous and aggravated, and included malice, oppression, insult, rudeness, indignity and a reckless and wanton disregard of Williams' rights and interests under the ADAAA. As a result, Williams is entitled to an award of punitive damages.

## COUNT IX
## Violation of FMLA
## (By Plaintiff Williams individually)

140.   Plaintiff Williams realleges and incorporates by reference all allegations in all preceding paragraphs.

141.   On or about August 6, 2018, Williams requested FMLA leave because she was suffering from disabling shoulder pain. Her FMLA leave was scheduled to expire on February 6, 2019.

142.   Plaintiff Williams engaged in protected activity by taking and requesting FMLA leave.

143.   On or about February 4, 2019, Williams contacted Bratcher regarding her imminent return to work on February 6, 2019.

144.   Bratcher informed Williams she was not on the schedule for February 6, 2019 and should contact the Human Resources Department.

145.   Williams contacted HR and stated she had a doctor appointment on February 5, 2019 to get final approval to return to work on February 6, 2019, with any needed restrictions.

146.   On February 5, 2019, Williams was released to return to work on February 6, 2019 with certain restrictions.

147.   Rather than return Williams to work at the end of her FMLA leave, Atrium unlawfully terminated her.

148.   Atrium took an adverse action against Plaintiff Williams by unlawfully terminating her because she exercised her rights to take protected FMLA leave.

149. Atrium's adverse employment action was causally connected to Plaintiff Williams' protected activity, as shown by the proximity in time between the protected FMLA leave and her termination.

150. Plaintiff Williams has suffered damages because of Atrium's unlawful conduct.

151. Atrium's violation of the FMLA, 29 U.S.C. § 2615(a)(2), by discriminating and retaliating against Plaintiff Williams because she engaged in protected activity under the FMLA, was willful and/or lacking good faith.

**COUNT X**
**Wrongful Discharge in Violation of Public Policy - violation of AD and/or FMLA**
**(By Plaintiff Williams individually)**

152. Plaintiff Williams realleges and incorporates by reference all allegations in all preceding paragraphs.

153. Atrium employed at least fifteen (15) employees at all relevant times.

154. Atrium violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1 by terminating Plaintiff Williams because of disability and/or in retaliation for exercising her FMLA rights.

155. Atrium violated the public policy by terminating Plaintiff Williams after she exercised her rights and in good faith opposed what she viewed as injurious conduct as set forth in the paragraphs above.

156. As an actual, proximate, and foreseeable consequence of Atrium's conduct, Plaintiff Williams has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

157.   Atrium's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff William's rights. As a result of Atrium's conduct, Plaintiff Williams is entitled to recover punitive damages in an amount to be determined at trial.

158.   Atrium's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief:

a.   Designation of this action as a collective action on behalf of the proposed ADEA Collective and promptly issue notice pursuant to 29 U.S.C. § 216(b) to all members of the defined opt-in class apprising them of the pendency of this action and permitting them to assert timely ADEA claims in this action by filing individual consents to join pursuant to 29 U.S.C. § 216(b);

b.   Designation of this action as a class action on behalf of the proposed Title VII Class wherein notice is promptly issued to proposed class members;

c.   Designation of this action as a class action on behalf of the proposed WDPP Class wherein notice is promptly issued to proposed class members;

e.   Designation of named Plaintiffs' attorneys as the attorneys representing the putative Collective and Class action Plaintiff;

f.   An award of damages for overtime compensation due to Plaintiffs and the Putative Collective and Class Members, including liquidated damages, to be paid by Defendant;

g.   Costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees;

h.   Pre-Judgment and post-Judgment interest, as provided by law; and

i.   Any and all such other and further legal and equitable relief as this Court deems necessary, just and proper.

j.   For an Order granting such other and further relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial.


*/s/ L. Michelle Gessner*
L. Michelle Gessner
NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
G.G. Galloway House
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiffs and Putative*
*Class Members*