**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| Priscilla Williams, Kimberly Napier, Penny Wolfe, Sandy Wizzard, individually and on behalf of all others similarly situated, | Civil Action No. 3:20-cv-00242 |
| Plaintiff, | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)** |
| vs. | |
| The Charlotte-Mecklenburg Hospital Authority, d/b/a Atrium Health, | |
| Defendant. | |

Defendant The Charlotte-Mecklenburg Hospital Authority, d/b/a Atrium Health ("Defendant" or "Atrium"), by and through its undersigned counsel, hereby submits this Memorandum in Opposition to Plaintiffs' Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b) ("Plaintiffs' Motion").

## I.     INTRODUCTION

Plaintiffs' Complaint defines the collective action under the ADEA as follows: "All persons who were or are employed by Atrium and who were discriminated against, harassed and/or retaliated against on the basis of age." (Dkt. 1 ¶ 60). Plaintiffs' Motion now defines the collective as: "All current and former employees who are or have been, at any time from April 23, 2017 to the present, employed by The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, Inc. f/k/a Carolinas HealthCare System (sic) who are over age 40 and who directly or indirectly report to Kerry Bratcher." (Dkt. 26, p. 1). Plaintiffs' Motion describes a much narrower class than the one alleged in Plaintiffs' Complaint and concedes what Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss Class Claims refused to make clear. Apparently, Plaintiffs are moving for conditional certification of an age discrimination class consisting only of those

employees who directly or indirectly worked under the supervision of one manager, Kerry Bratcher. Nevertheless, Plaintiffs still fail to show how the individuals in this small group of current and former employees are similarly situated as required by 29 U.S.C. § 216(b), and the Court should deny Plaintiffs' Motion.

## II.    STATEMENT OF FACTS

Plaintiffs filed a Complaint against Atrium alleging overlapping, conflicting individual, class, and collective action claims for discrimination, harassment and retaliation under both the Age Discrimination in Employment Act, 20 U.S.C. 621, *et seq*. ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII").   Plaintiffs also assert Rule 23 class claims for wrongful discharge under North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et seq.* ("NCEEPA").[1] (Dkt. 1 ¶¶ 1-3). Plaintiff Williams asserts additional individual discrimination and failure to accommodate claims in violation of Title I of the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12111, *et seq.* ("ADAAA") and a retaliation claim under the Family Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq.* ("FMLA"). (Dkt. 1 ¶ 4).  Willisene Sloan (Dkt. 2), Yvette Phillips (Dkt. 17), and

---

[1] Plaintiffs' Complaint purports to set forth the following class claims:
- "Count I: Age Discrimination – Violation of ADEA by Plaintiffs Williams, Napier and Wolfe and the ADEA Collective"
- "Count II: Harassment/Hostile Work Environment – Violation of ADEA by Plaintiffs William, Napier, Wolfe and the ADEA Collective"
- "Count III: Retaliation – Violation of ADEA by Plaintiffs Williams, Napier, Wolfe and the ADEA Collective"
- "Count IV: Race Discrimination – Violation of Title VII by Plaintiffs Williams, Wizzard and the Title VII Class"
- "Count V: Race Harassment/Hostile Work Environment – Violation of Title VII by Plaintiffs Williams, Wizzard and the Title VII class"
- "Count VI: Retaliation – Violation of Title VII by Plaintiffs Williams, Wizzard and the Title VII Class"
- "Count VII: Wrongful Discharge in Violation of Public Policy – Violation of Title VII by Plaintiffs Williams, Wolfe, and the WDPP Class"

Lisa Smith-Benge (Dkt. 19) have filed consents to join the purported ADEA Collective Action pursuant to 29 U.S.C. 216(b). Atrium filed motions to dismiss the class and collective claims and the individual claims of Plaintiff Wolfe on June 10, 2020. (Dkts. 12 and 14). These motions are still pending.

Plaintiffs now move to conditionally certify the ADEA collective action and to facilitate notice pursuant to 29 U.S.C. § 216(b). (Dkt. 25). Plaintiffs' Motion is accompanied by declarations from named Plaintiffs Napier and Wolfe and opt-in Plaintiff Smith-Benge. (Dkt. 26-1, Dkt. 26-2, Dkt. 26-3).

## III.   LEGAL ARGUMENT AND CITATION TO AUTHORITY

### A.   Plaintiffs Cannot Amend Their Complaint With A Motion For Conditional Certification.

Rather than responding in a straightforward fashion to Defendant's Motion to Dismiss Class Claims and conceding that the class alleged in their original Complaint was overly broad, unascertainable and not supported by their factual allegations, Plaintiffs instead have filed a Motion for Conditional Certification with an entirely different and more narrow definition of the proposed ADEA class. Plaintiffs have narrowed the scope of their alleged age class to encompass only those current and former employees over the age of 40 ***who reported directly or indirectly to Kerry Bratcher***. (Dkt. 26, p. 1) (emphasis added).

Defendant's Motion to Dismiss Class Claims argued that Plaintiffs' proposed age collective action definition and their proposed Rule 23 class definitions for claims under Title VII and the NCEEPA are unascertainable, lack commonality, and suffer from disqualifying conflicts.[2] Plaintiffs' attempt to circumvent Atrium's motions to dismiss by moving for conditional

---

[2] Atrium incorporates the arguments made in Atrium's Briefs in Support of its Motion to Dismiss or Strike Plaintiffs' Collective Action and Class Claims, which was filed on June 10, 2020, and is still pending before the Court. (Dkt. 12, 13, & 23).

certification of an age discrimination class consisting only of those employees who directly or indirectly worked under the supervision of one manager is impermissible and disingenuous. A party cannot amend its complaint by filing briefs or an unrelated motion. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D.Md. 1997) ("[T]he plaintiff is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *see Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985).

Plaintiffs' Motion essentially concedes that the collective action and class action descriptions in Plaintiffs' Complaint do not pass muster under the applicable pleading standards and rules. Moreover, Plaintiffs do not indicate if their alleged Rule 23 class action definitions will remain as broadly alleged in their Complaint, or whether Plaintiffs will try to employ a similar tactic when moving for Rule 23 class certification by proposing a new and different class definition than the one the parties have been litigating. Atrium renews its Motion to Dismiss or Strike Plaintiffs' Collective Action and Class Claims and urges the Court to grant its motion.

Even if the Court is not inclined to dismiss or strike Plaintiffs' collective action and class claims, the Court should deny Plaintiffs' Motion for Conditional Certification of a different age discrimination class than the one alleged in the Complaint. Even though the class for which Plaintiffs' Motion seeks conditional certification is much narrower than the one originally alleged, Plaintiffs still fail to show how the individuals in this small group of current and former employees are similarly situated as required by 29 U.S.C. § 216(b).

**B.**     **Plaintiffs Do Not Meet the Standard for Conditional Certification.**

Section 626 of the ADEA permits discrimination claims to be brought as collective actions pursuant to § 216 of the Fair Labor Standards Act ("FLSA"), under which participating members

"opt-in" to the class as opposed to "opting out" of a typical Rule 23 class action. *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 891 (D.Md. 1995) (citing 29 U.S.C. §§ 626(b), 216(b)). Specifically, Section 216 provides:

> An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "By statute, a class action under the ADEA cannot be maintained unless the plaintiffs are 'similarly situated.'" [3] *D'Anna*, 903 F. Supp at 891. The "similarly situated" standard requires a showing that "multiple claims can be adjudicated efficiently because they share common underlying facts and do not require substantial individualized determinations for each class member." *Purdham v. Fairfax Cnty. Public Schools*, 629 F.Supp.2d 544, 549 (E.D.Va. 2009); *see Stokes v. Westinghouse Savannah River Co.,* 206 F.3d 420, 431 (4th Cir. 2000) (denying certification of ADEA class where class members' factual "circumstances differed in material respects."). The standard for conditional certification is "fairly lenient," but it is not a "rubber-stamp approach." *Adams v. Citicorp Credit Servs., Inc.*, 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (citation omitted). While parties generally "have minimal evidence at this point in the proceedings[,] … [m]ere allegations will not suffice; some factual evidence is necessary." *Id.*

---

[3] The FLSA does not define "similarly situated," and the Fourth Circuit Court of Appeals has not provided guidance on how the term "similarly situated" should be applied. *Holland v. Fulenwider Enterprises, Inc.*, 2018 WL 7000801, at *2 (W.D.N.C. Feb. 2, 2008). However, federal district courts in the Fourth Circuit typically follow a two-step approach when deciding whether the named plaintiffs are similarly situated to potential plaintiffs for the purposes of a collective action. *See, e.g., Butler v. DirectSAT USA, LLC,* 876 F. Supp 2d 560, 566 (D.Md. 2012); *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011); *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562-62 (E.D.Va. 2006). Conditional class certification is a two-stage process. *Holland*, 2018 WL at p. *2.

(citations omitted). Here, Plaintiffs fail to meet this minimal standard because (1) they do not show how they are similarly situated; and (2) their allegations are not supported by facts.

**1. Plaintiffs are not similarly situated.**

The circumstances underlying the claims of the alleged class are not similar and will require individualized determinations by the Court. Thus, these claims cannot be adjudicated efficiently in a collective action. Conditional certification is appropriate when it will serve judicial efficiency. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). The Supreme Court has emphasized that the goal of § 216(b) is efficiency, and that a court has "a managerial responsibility ... to assure that the [joinder of additional parties] is accomplished in an efficient and proper way." *Id.* at 170–71; *see also Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 147 (4th Cir.1992) (holding that a decision denying certification of a collective action is reviewed only for an abuse of discretion).

While Plaintiffs' Motion narrows the alleged class definition in the Complaint, Plaintiffs still fail to make even a modest showing that they are similarly situated or were victims of a common policy or plan that violated the ADEA. Specifically, Plaintiffs' Motion and the declarations allege only that Kerry Bratcher made discriminatory statements about older employees or allegedly engaged in discriminatory conduct towards three individual employees over 40. Plaintiffs fail to allege that Ms. Bratcher's statements resulted in any class wide disparate treatment of employees over the age of 40 or even what the alleged adverse employment actions were with respect to the alleged class members. Plaintiffs' Motion also fails to allege any actions by Defendant or Ms. Bratcher that had a disparate impact on employees over the age of 40. Rather, in the Complaint and newly filed declarations, named Plaintiffs Napier and Wolfe and opt-in Plaintiff Smith-Benge simply allege individual disparate treatment with respect to different and

disconnected experiences. There is no alleged common practice applicable to older employees as a whole.

The Complaint and Plaintiffs' Motion do not establish that the named Plaintiffs and the class members are similarly situated to each other. Rather, the allegations, if taken as true, show only that the two named Plaintiffs and opt-in Smith-Benge had different experiences that allegedly resulted in different adverse employment actions with a common supervisor.[4] Where the Court must delve individually into the facts of each individual class member's claims and the underlying factual "circumstances differ in material respects, a collective action is not appropriate." *Stokes*, 206 F.3d at 431.

Courts routinely deny conditional certification motions where the lead plaintiffs have not demonstrated they are similarly situated to putative collection action members with respect to the asserted claims. *Bearden v. AAA Auto Club S, Inc*., 2013 WL 118474, at * 7 (W.D. Tenn. Mar. 18, 2013) ("[T]here must be a specific factual showing, albeit 'modest,' that the theoretical claims of the potential class members share with the named plaintiffs a common theory that the … classification [or alleged violation of law] was improperly applied to them."); *Heath v. Google, Inc.*, 215 F. Supp. 3d 844, 851 (N.D. Cal. 2016) ("[u]nsupported allegations of [ADEA] violations are not sufficient to meet the plaintiffs' burden"); *Lawrence v. Town of Irondequoit*, 246 F. Supp. 2d 150, 171 (W.D.N.Y. 2002) (denying certification of ADEA collective action where putative class as defined had no ADEA claim); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (plaintiff must submit "substantial allegations of class-wide discrimination" supported by affidavits to show he is similarly situated); *Cason v. Vibra Healthcare*, 2011 WL

---

[4] Atrium denies the truth of any and all of Plaintiffs' allegations. However, for purposes of this response to Plaintiffs' Motion, even if taken to be true, Plaintiffs' allegations are insufficient to establish the "similarly situated" standard.

1659381, at * 2 (E.D. Mich. May 3, 2011) (denying conditional certification because "Plaintiff has not identified any other person" whose rights were violated by the same policy in the same way); *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 959, 966 (W.D. Mich. 2009) (plaintiffs' affidavits are insufficient to show a common policy or practice instituted against all individuals in the putative class); *Bacon v. Eaton Aeroquip, LLC*, 2012 WL 6567603 (E.D. Mich. Dec. 17, 2012) (denying renewed motion for conditional certification because "conclusory" affidavits asserting that a plaintiff "believe[d] other workers were discriminated against in similar ways" is insufficient to establish plaintiffs are similarly situated); *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *5 (S.D. Cal. Apr. 22, 2008) (denying proposed collective FLSA action where plaintiffs submitted only boilerplate assertions and legal conclusions without actual support); *Demorris v. Rite Way Fence, Inc.*, 2015 WL 12990483 (E.D. Mich. Mar. 30, 2015) (denying motion for conditional certification where plaintiffs did not present evidence of a common plan or policy that violated the FLSA.

Named Plaintiff Napier alleges "[she] suffered age discrimination, harassment, and retaliation, which included, but was not limited to, a demotion" (Dkt. 1 ¶ 7).  She claims that Bratcher gave her a false negative annual review (Dkt. 1 ¶ 33, 51-52); suggested she should "step down from her role as a CS" (Dkt. 1 ¶ 31); told her that she was ineffective in her position and encouraged her to look for another job." (Dkt. 26-1 ¶ 7); "mocked and humiliated" her during a conference call (Dkt. 1 ¶ 50); spoke to her in a "demeaning and unprofessional tone and manner" (Dkt. 1 ¶ 54), and "targeted" her (Dkt. 1 ¶ 41).  Napier alleges that she received counseling only after she complained about Bratcher to her superiors and Human Resources (Dkt. 1 ¶¶ 24, 28, 29, & 36; Dkt. 26-1 ¶ 13).   She alleges that she did not receive a raise as a result of this "retaliatory" discipline and that she was "forced to step down as a CS" (Dkt. 1 ¶ 38).

In the Complaint and in her Declaration, Named Plaintiff Wolfe alleges in a conclusory and unspecific fashion that she was "constructively discharged when she was forced into early retirement due to Bratcher's harassment and targeting." (Dkt. 1 ¶ 41; Dkt. 26-2 ¶ 8).  Wolfe's Declaration does nothing to correct the pleading deficiencies in the Complaint and does not specify how she was targeted or harassed by Bratcher.  Wolfe still fails to allege the required elements of her constructive discharge claim, as previously argued in Defendant's Motion to Dismiss Penny Wolfe's Individual Claims. (Dkt. 14 & 15).  Even if the Court does not dismiss Wolfe's legally deficient claim, litigation of Wolfe's claim would involve discovery and resolution of an individualized constructive discharge claim that has nothing in common with the alleged facts underlying Napier's individualized claims of discriminatory discipline and performance reviews. Nor does Plaintiffs' Motion explain how Wolfe's claims would relate to those of other putative class members.

Finally, opt-in plaintiff Lisa Smith-Benge alleges that she was denied a promotion as the result of discriminatory treatment by Ms. Bratcher.  Smith-Benge alleges that Ms. Bratcher told her that she "would rather have a new inexperienced nurse that smiled at me over a nurse with 20 years of experience," that Ms. Bratcher told Smith-Benge that her body language was offensive and had drawn complaints from other staff members, and that Bratcher forced Smith-Benge to take learning modules relating to body language and communication.  (Dkt. 26-3 ¶ 5-6).  Smith-Benge alleges that she believes she was retaliated against by HR after she called corporate compliance anonymously and "complained about Bratcher's discrimination," simply because an HR manager Robin Nievard made comments defending Bratcher afterwards.  (Dkt. 26-3 ¶ 13-14).  Smith-Benge claims that she was denied a promotion to the "CS job left vacant by Ms. Napier in the spring/early summer of 2018," because of continuing discrimination or retaliation by Bratcher.  (Dkt. 26-3 ¶¶

15 & 17, 23-25).

Williams, who has not submitted a declaration, alleges that she was terminated, but does not identify the specific reason and instead alleges that her termination resulted from race, age and disability discrimination and harassment, FMLA retaliation and wrongful discharge under the NCEEPA (Dkt. 1 ¶ 1-5). Williams claims that in January 2018, she "and several other older and African American employees" complained about "discrimination, harassment and retaliation by Bratcher" (Dkt. 1 ¶ 34). She specifically alleges that after she went out on FMLA leave in August 2018, Bratcher "gave her the run-around [about returning to work]" and told her to contact HR, and that Atrium then "unlawfully terminated" her on February 4, 2019 (Dkt. 1 ¶45-48). Again, Williams' unique allegations have nothing in common with the claims alleged by the other Plaintiffs except that she had the same manager. She does not even allege that Bratcher made the decision to terminate her employment.

Although each one of these plaintiffs complain about alleged discriminatory treatment by Ms. Bratcher, the claims allege different adverse employment actions involving individualized facts and circumstances and not an alleged common policy or practice that impacted all employees over the age of 40. Smith-Benge claims she was denied a promotion. Napier alleges she was forced to agree to a demotion (Dkt. 1 ¶ 7). Wolfe alleges constructive discharge (Dkt. 1 ¶ 41). In sum, each of these claims of individual discrimination, harassment or retaliation will require an individualized factual and legal inquiry.

### 2. No judicial economy will be achieved by conditional certification of a small class of individuals who are making individual disparate treatment claims.

As previously noted, conditional certification is only appropriate when it will serve judicial efficiency. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Judicial economy will not be achieved in this case where the potential size of an ADEA collective class is extremely

small and the alleged claims are individual disparate treatment claims. The number of current and former employees age 40 and over that worked in Ms. Bratcher's unit during the time period from April 23, 2017 to the present is only 24. (Exhibit 1, Declaration of Monique Moore ("Ex. 1") ¶ 4(a)). Although Rule 23's requirements of numerosity, typicality, commonality, and adequacy do not apply in FLSA collective actions, judicial economy will not be served in a collective case with such a small number of potential plaintiffs, particularly where the putative class members' claims are individual disparate treatment claims. *See Sharkey v. Fortress Sys. Int'l, Inc.*, 2019 WL 845265, at *2 (W.D.N.C. Jan. 15, 2019) (citing *Mancia v. Mayflower Textile Servs. Co.*, 2008 WL 4735344, at *2 (D.Md. Oct. 14, 2008)).

The number of potential adverse employment decisions that could even be at issue among the alleged class is also extremely low. Atrium's PeopleSoft data reflects only 13 terminations among this group of employees and 10 of these 13 terminations are coded as resignations or retirements. (Ex. 1 ¶ 4(b)). The required elements of a constructive discharge claim, which is the only claim asserted by Plaintiff Wolfe, are inherently fact specific and individualized, and not well suited to class treatment.[5] Among this same group of employees who are 40 or older, there have

---

[5] To state a constructive discharge claim, a plaintiff must plausibly allege that (1) an employer acted deliberately to induce resignation; and (2) the employee's working conditions were so intolerable that a reasonable person would have resigned. *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 733–34 (4th Cir. 1996); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir. 1995). These elements are the same in the context of an ADEA claim. *See, e.g., Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1254–56 (4th Cir. 1985). The working conditions must be "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *see Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–88 (4th Cir. 2004). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quotation omitted); *see Bristow*, 770 F.2d at 1255 (stating that an employee "is not ... guaranteed a working environment free of stress"). "Because the claim of constructive discharge is so open to abuse by those who leave employment [voluntarily], [the

only been 2 demotions from April 23, 2017 to the present. (Ex. 1 ¶ 4(c)).

Again, Plaintiffs' Motion and Complaint do not clarify how an alleged common practice or policy affected employees over 40. In reality, the named Plaintiffs are alleging four individual disparate treatment cases. Joining more plaintiffs via a collective action process will not change the individualized nature of their claims or additional plaintiffs who opt into this case.

### 3. The unreliable, hearsay statements in Plaintiffs' declarations must be disregarded.

Much like Plaintiffs' Complaint, the declarations submitted by Plaintiffs Napier, Wolfe, and Smith-Benge in support of Plaintiffs' Motion are replete with conclusory statements and threadbare assertions and provide further support for Atrium's motions to dismiss. Moreover, the declarations contain pervasive hearsay and the allegations reveal the declarants' lack of personal knowledge.

Although courts in the Fourth Circuit have held that hearsay evidence is allowed in an affidavit supporting a motion for conditional certification, the hearsay evidence must be based on personal knowledge. *Williams v. G4S Secure Sols. (USA) Inc.*, 1:17 CV 51, at *7, 2018 WL 565718, at *3 (M.D.N.C. Jan. 24, 2018); *Hollis v. Alston Pers. Care Servs., LLC*, 2017 WL 3327591, at *2 (M.D.N.C. Aug. 3, 2017) (quoting *McCoy v. RP, Inc.*, 2015 WL 6157306, at *3 (D.S.C. Oct. 19, 2015)). Federal Rule of Evidence 602 provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous" to be admissible. *Asselin v. Waldron*, 2004 WL 57683, at *3 (D.N.H. Jan. 13, 2004); *see also Wright v. Lehigh Valley Hosp.*,

---

Fourth Circuit] has insisted that it be carefully cabined." *Honor*, 383 F.3d at 187 (quotation omitted).

2010 U.S. Dist. LEXIS 86915 (E.D. Pa. Aug. 24, 2010) (vague statements present inadmissible evidence). Additionally, although personal knowledge may include reasonable inferences, those inferences still must be grounded in observation or other first-hand personal experience and must be "substantiated by specific facts." *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998); *see also Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 396 (M.D.N.C. 2003).

The Court should thus disregard these hearsay statements in Plaintiff's declarations:

(1) Napier: "I heard from multiple coworkers that Bratcher stated on several occasions that she wanted to get rid of older and/or African American employees on the Unit." (Dkt. 26-1 ¶ 4);

(2) Napier and Wolfe: "I heard she told the younger employees they could "thank her" when these employees were terminated or forced out." (Dkt. 26-1 ¶ 5; Dkt. 26-2 ¶ 5);

(3) Napier and Wolfe: "I learned that Bratcher's plan was to "performance out" older employees by writing them up." (Dkt. 26-1 ¶ 6; Dkt. 26-2 ¶ 6);

(4) Napier: "I am aware that Bratcher also told a younger nurse that she was trying to get rid of Plaintiff Wolfe specifically and began targeting Wolfe. I am aware that Bratcher thereafter told Wolfe she should "step down" from her supervisory position." (Dkt. 26-1 ¶ 8);

(5) Wolfe: "I am aware that Bratcher also told a younger nurse that she was trying to get rid of me specifically and began targeting me." (Dkt. 26-2 ¶ 8);

(6) Wolfe: "I am aware that Bratcher asked Plaintiff Napier to 'step down' from her supervisory position and made frequent comments that she was unable to work with Napier and that Napier was unwilling to support her changes." (Dkt. 26-2 ¶ 7);

(7) Napier and Wolfe: "I am aware that Bratcher stated she was not going to give supervisory positions to an older employee because she hoped to get rid of her and that she denied an older nurse a supervisory position that was given to a much younger nurse." (Dkt. 26-1 ¶ 9; Dkt. 26-2 ¶ 9);

(8) Napier and Wolfe: "I am aware that Bratcher stated, after getting rid of some older employees, that she was much happier with her 'younger staff.'" (Dkt. 26-1 ¶ 11; Dkt. 26-2 ¶ 11);

(9) Wolfe: "I am aware that those who complained about Bratcher were subjected to retaliation. After Napier complained, Bratcher began 'counseling' Napier about performance issues, even though she had never been counseled before." (Dkt. 26-2 ¶ 13);

(10) Napier and Wolfe: "I have communicated with other employees of Atrium Health, who confirm they experienced and witnessed the same age discrimination by Bratcher and the same refusal of Atrium to prevent or remedy the age discrimination." (Dkt. 26-1 ¶ 15; Dkt. 26-2 ¶ 15).

None of these allegations explain how Napier or Wolfe have any personal knowledge of the hearsay allegations. There is no explanation of how they were made aware of the alleged information or who told them. Instead, the statements are predicated upon undefined discussions with unnamed persons at unspecified times and are simply too amorphous to be admissible under the federal decisions cited above.

Most of the remaining allegations in the Declarations are conclusory statements without detail, like the deficient allegations in Plaintiffs' Complaint. Atrium further urges the Court to disregard the conclusory statements in these allegations:

(1) Napier and Wolfe state that they "personally witnessed Bratcher **repeatedly target**

older and/or African American employees. (Dkt. 26-1 ¶ 5; Dkt 26-2 ¶ 5) (emphasis added), but provide no examples of Bratcher's alleged "repeated[] target[ing]."

(2) Napier and Wolfe allege that Bratcher instructed "other employees" to "write up" an older, African American employee. (Dkt. 26-1 ¶ 6; Dkt. 26-1 ¶ 6), but fail to provide the names of any involved or dates of the alleged instruction.

(3) Napier and Wolfe allege they "witnessed Bratcher treat Sloan **so horribly** that she was forced to resign." (Id.) (emphasis added.) There is no elaboration about the alleged "horribl[e]" treatment. (*See* Dkt. 26-1; Dkt. 26-2).

(4) Napier and Wolfe state that they "witnessed Bratcher subject older employees to **heightened scrutiny** and **single them out** on the basis of their age, holding them to a **different standard** than younger employees." (Dkt. 26-1 ¶ 10; Dkt. 26-2 ¶ 10) (emphasis added). Again, they provide no examples of the alleged "heightened scrutiny"; "singling out" on the basis of age; or "different standard" for younger employees." (*See* Dkt. 26-1; Dkt. 26-2).

(5) Smith-Benge alleges that "the amount of older, experienced RNs was diminishing and those of us left were stressed and being **pushed to the limit because of decisions Bratcher made**." (Dkt. 26-3 ¶ 16) (emphasis added). She provides no examples of how older and experienced RNs were "pushed to the limit" and no examples of actions taken by Bratcher. (Dkt. 26-3.)

(6) Smith-Benge also alleges that Bratcher **"target[ed]"** her but provides no specific facts about the alleged "targeting". (Dkt. 26-3 ¶ 23).

All of these allegations are conclusory statements without supporting facts. These allegations do nothing to meet Plaintiffs' burden to show they are "similarly situated" and that

conditional certification is warranted. *Adams*, 93 F. Supp. 3d at 453. In light of the unreliability of Plaintiffs' declarations, Atrium respectfully requests that the Court disregard the allegations in Plaintiffs' declarations.

    **C.**    **Defendant Objects to Plaintiffs' Proposed Notice Form and Notice Process.**

    As Plaintiffs have failed to meet their burden for conditional certification, the Court should not authorize any notice to potential opt-in plaintiffs. If the Court does grant conditional certification under the ADEA, however, Atrium objects to Plaintiffs' proposed notice form and process.

    District courts have wide discretion in facilitating notice to potential claimants. *Hoffman-La Roche*, 493 U.S. at 174. Courts may limit the scope of the proposed class, restrict duplicative notices, and alter the content of the proposed notice. *See, e.g., Moseman v. U.S. Bank Nat'l Ass'n*, 2018 WL 3616864 (W.D.N.C. June 12, 2018). First, Atrium objects to the notice form submitted with Plaintiffs' Motion (Dkt. 25-1) because it is misleading. In the first paragraph, Plaintiffs misstate the class definition as alleged in Plaintiffs' Complaint. (Dkt. 1 ¶ 60; Dkt. 25-1). More glaringly, the notice completely fails to inform potential plaintiffs that the Court has not ruled on the merits of this case. Moreover, the notice indicates the court has ruled that a certain class of individuals is "similarly situated" without any explanation as to what the legal term "similarly situated" means. If the Court grants Plaintiffs' Motion, Atrium respectfully requests the opportunity to submit its own proposed notice form for the Court's review to ensure the form properly informs the potential opt in plaintiffs regarding the claim and comports with the Court's rulings. In the alternative, Atrium is willing to meet and confer with Plaintiffs to resolve the disputed issues concerning the notice form.

    Atrium also objects to the notice process proposed by Plaintiffs, specifically to a requirement that Atrium provide employee telephone numbers, dates of birth, and social security

numbers; the 90 day notice period; and the posting of notice at the hospital. Atrium also seeks fourteen (14) days within which to provide Plaintiffs the available mailing address and email address data for the potential opt-in plaintiffs if the Court grants conditional certification and allows Plaintiffs to send notice to the potential class members.

Courts have been reluctant to require employers to provide private information regarding employees such as telephone numbers, dates of birth, and social security numbers. *See, e.g., Hart v. Barbeque Integrated, Inc.*, 2017 WL 4812591, at *7 (D.S.C. Oct. 25, 2017) ("Although email addresses are more routinely disclosed, district courts in this circuit have required a showing of a 'special need' before requiring the disclosure of phone numbers."); *Valerio v. RNC Indust., LLC,* 314 F.R.D. 61, 75 (E.D.N.Y. 2016) ("Courts are reluctant, however, to authorize disclosure of private information, such as dates of birth and social security numbers in the first instances and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action.").

Plaintiffs have not provided any justification for the disclosure of personal telephone numbers, dates of birth, and social security numbers of potential opt-in plaintiffs. In the absence of any such justification and given the highly personal and private nature of such information, Atrium respectfully requests the Court limit its required disclosure to names, home addresses and email addresses.

Atrium also objects to a 90-day opt-in period and Plaintiffs have not provided any argument for why a 90-day opt-in period is warranted. If the Court defines the collective as described in Plaintiffs' Motion, notice will be sent to only eighteen (18) people—removing the three named Plaintiffs and three current opt in Plaintiffs. (Ex. 1 ¶ 4(a)). Thirty days is reasonable and ample time for the collection of consent forms from such a small group of putative class members and

from the even smaller number of those who will decide to submit consent forms and opt into the class.

Finally, Atrium objects to any requirement that notice be posted in the workplace. Plaintiffs have provided no reason why posting a notice in the workplace is warranted in this case. Posting notice in the workplace would not reach more potential plaintiffs than mail and email. The addresses and email addresses for Atrium's current employees should be accurate and can be confirmed. Former employees are not going to have access to a posting in the workplace and can only be reached by mail or email in any event.

Moreover, posting the notice would impose an unnecessary burden and intrusion into Atrium's workplace and the hospital itself. Plaintiffs are asking to post such a notice on the 11th floor at Levine Children's Hospital where pediatric cancer patients receive care. The notice would cause a disruption and distraction to the Levine Children's Hospital staff to the detriment of employee morale. The notice could also be read by patients and their families whose care and well-being is paramount. Notification via email and U.S. Mail should be sufficient to notify putative class members of the collective action. Posting notice in the hospital will do nothing but create disruption.

Courts have declined to order the posting of notice at the workplace when the plaintiffs fail to explain why provision of the notice via other means is insufficient. *See Phelps v. Mc Communications, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) (finding the defendants were not required to post notice in the workplace as there was no indication that service via 1st Class Mail would be ineffective or inadequate); *Litinovia v. City and Cnty. Of San* Francisco, 2019 WL 1975438, at *5 (N.D. Cal. Jan. 3, 2019) (noting that the plaintiff had not explained why posting notice in the workplace was necessary in light of the ability to send notice via other means); *Earl*

*v. Norfolk State Univ.*, 2014 WL 6608769, at *8 (E.D.Va. Nov. 18, 2014) (finding that posting notice at the workplace was not required to facilitate notice to potential plaintiffs); *Charbonneau v. Mortgage Lenders of Am.,* 2018 WL 6423584, at *4 (D. Kan. Dec. 6, 2018) (declining to order posting of notice at workplace because the plaintiffs had not shown why it was necessary, posting at the workplace would not reach a wider audience than mailing notice directly; and the addresses for the defendant's current employees were presumed accurate).

IV.     **CONCLUSION**

In sum, this case alleges individualized grievances which are not held together by any common facts other than a common manager.  Plaintiffs do not allege any common discriminatory policies or practices applied to employees over the age of 40 by Defendant.  Where Plaintiffs have not shown that they are similarly situated or that their age claims warrant collective treatment for judicial economy or any other reason, Plaintiffs' Motion should be denied.


[SIGNATURE BLOCK ON FOLLOWING PAGE]

Dated: August 11, 2020

/s/ Stephen D. Dellinger
_____
Stephen D. Dellinger, Bar No. 16609
sdellinger@littler.com
Elizabeth H. Pratt, Bar No. 46132
epratt@littler.com
Jennifer K. Staples, Bar No. 39833
jstaples@littler.com
LITTLER MENDELSON, P.C.
Bank of America Corporate Center
100 North Tryon Street, Suite 4150
Charlotte, NC  28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

Leslie A. Dent, *Pro Hac Vice*
ldent@littler.com
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA 30326
Telephone: 404.233.0330
Facsimile: 404.233.2361

Attorneys for Defendant

## CERTIFICATE OF SERVICE

This is to certify that on August 11, 2020, the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the following CM/ECF participants in this case.

L. Michelle Gessner
GessnerLaw, PLLC
602 East Morehead Street
G.G. Galloway House
Charlotte, NC 28202

*Attorney for Plaintiffs*

/s/ Stephen D. Dellinger
Stephen D. Dellinger, Bar No. 16609
sdellinger@littler.com
Elizabeth H. Pratt, Bar No. 46132
epratt@littler.com
Jennifer K. Staples, Bar No. 39833
jstaples@littler.com
LITTLER MENDELSON, P.C.
Bank of America Corporate Center
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
Telephone: 704.972.7000
Facsimile: 704.333.4005

Leslie A. Dent, *Pro Hac Vice*
ldent@littler.com
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA 30326
Telephone: 404.233.0330
Facsimile: 404.233.2361

Attorneys for Defendant