UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00242-RJC-DSC

| | |
|---|---|
| PRISCILLA WILLIAMS, KIMBERLY NAPIER, PENNY WOLFE, SANDY WIZZARD, individually and on behalf of all others similarly situated </br></br>Plaintiffs,</br></br>v.</br></br>THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY,</br></br>Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss/Strike Class Claims and/or For More Definite Statement of Plaintiffs' Complaint (Doc. No. 12), Defendant's Motion for Dismissal of Plaintiff Penny Wolfe's Claims (Doc. No. 14), Plaintiff's Motion to Conditionally Certify a Collective Action And Facilitate Notice Pursuant to 29 U.S.C. § 216(b) (Doc. No. 25), and the Magistrate Judge's Memorandum and Recommendation on Defendant's motions to dismiss ("M&R") (Doc. No. 29).

For the reasons stated herein the Court **ADOPTS** the M&R (Doc. 29), Defendant's Motion to Dismiss/Strike Class Claims and/or For More Definite Statement of Plaintiffs' Complaint (Doc. No. 12) is **DENIED**, Defendant's Motion for Dismissal of Plaintiff Penny Wolfe's Claims (Doc. No. 14) is **GRANTED**, and Plaintiffs' Motion to Conditionally Certify a Collective Action And Facilitate Notice Pursuant to 29 U.S.C. § 216(b) (Doc. No. 25) is **GRANTED** in part. Plaintiff Penny Wolfe shall have thirty (30) days from the entry of this Order to file an amended complaint specifically as to Wolfe's claims only.

## I. BACKGROUND

Accepting the factual allegations in the Complaint as true, Plaintiffs are current or former employees of Defendant the Charlotte Mecklenburg Hospital Authority, known as Atrium Health ("Defendant" or "Atrium"), in its Pediatric Cancer Unit at Atrium Health Levine Children's Hospital, working as Nurses, Registered Nurses, or Healthcare Technicians. (Doc. No. 1 ¶ 20). Plaintiffs Williams, Napier, and Wolfe are over the age of forty. (*Id.* at ¶¶ 5, 7-8). Plaintiffs Williams and Wizzard are African American women. (*Id.* at ¶¶ 5-6).

Plaintiffs began working under Nurse Manager Kerry Bratcher ("Bratcher") in 2017. (*Id.* at ¶¶ 21-22). After her arrival in 2017, Bratcher informed several individuals that "she wanted to get rid of older and African American employees" in the Pediatric Cancer Unit, informed others in a meeting she wanted to "change the face" of Atrium's Healthcare Technicians (who were mostly older, African American females) and hire all new Healthcare Technicians, began "targeting" them, and told others they could "'thank her' when older, African Americans were terminated or forced out." (*Id.* at ¶¶ 22, 25-26).

Bratcher engaged in numerous actions between 2017 and when the Complaint was filed in April 2020 that Plaintiffs allege were discriminatory, harassing, retaliatory, and/or against public policy, including, among others, instructing employees to write up certain older, African American employees so they could be terminated, not hiring older nurses for open positions, suggesting an older employee was "too tired" and should look for another job, informing younger nurses she wanted to get rid of older nurses, moving a sick patient from an older nurse to a younger nurse to help Defendant get an accreditation, causing an African American nurse to quit because she created a hostile work environment, terminating a Healthcare Technician over 40 for allegedly false performance reasons, and publicly humiliating an older nurse in front of younger nurses. (*Id.* at

2

¶¶ 31, 39-40, 43, 56-58).

Napier and Williams reported their concerns to the Director of Nursing Services and/or Human Resources on multiple occasions, but their complaints were not addressed. (*Id.* at ¶ 23, 27, 30, 34, 37-38, 42-45, 53). Additionally, in January and February 2019, Napier "and others" filed claims for age and race discrimination with Defendant's corporate compliance. (*Id.* at ¶ 42). Afterwards, Human Resources completed an investigation and the Human Resources representative "assured them something would be done and apologized that they have been dealing with this for over two years." (*Id.* at ¶ 44). However, that Human Resources representative was transferred to another unit within a few weeks and afterwards nobody from Human Resources followed up on the investigation. (*Id.* at ¶ 45).

As to Plaintiff Wolfe specifically, in August 2017, Bratcher spoke to Wolfe about stepping down as a Clinical Supervisor. (*Id.* at ¶ 32). Bratcher also told a younger nurse that she was working on getting rid of Wolfe. (*Id.* at ¶ 41). The Complaint also states that Bratcher was "targeting Wolfe," in February 2019 Wolfe was "constructively discharged when she was forced into early retirement due to Bratcher's harassment and targeting," and "[w]hen Plaintiffs Williams, Napier and Wolfe . . . complained to Human Resources" no action was taken. (*Id.* at ¶¶ 41, 49, 75, 83).

On January 24, 2020, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue to each of the Plaintiffs. (*Id.* at ¶ 18). Plaintiffs filed the instant action against Defendant on April 23, 2020. Along with individual claims, Plaintiffs assert class action claims against Defendant as follows:

- Plaintiffs Williams, Napier and Wolfe allege a collective action under the Age Discrimination in Employment Act of 1967 ("ADEA"), with claims of discrimination, harassment, and retaliation on the basis of age. The class as defined in the Complaint is: "All persons who were or are employed by Atrium and who were discriminated

against, harassed and/or retaliated against on the basis of age" (the "ADEA Class"). (*Id.* at ¶ 60).

- Plaintiffs Williams and Wizzard allege a class action under Title VII of the Civil Rights Act of 1964 ("Title VII"), with claims of discrimination, harassment, and retaliation on the basis of race. The class as defined in the Complaint is: "All persons who were or are employed by Atrium and who were discriminated against, harassed and/or retaliated against on the basis of race" (the "Title VII Class"). (*Id.* at ¶ 68).

- Plaintiffs Williams and Wolfe allege a class action for wrongful discharge in violation of public policy under the North Carolina Equal Employment Practices Act ("NCEEPA"), for Defendant's violation of the ADEA and/or Title VII. The class as defined in the Complaint is: "former employees of Atrium who were terminated in violation of North Carolina public policy" (the "Wrongful Discharge Class"). (*Id.* at ¶ 69).

Defendant answered by filing a Motion to Dismiss/Strike Class Claims and/or For More Definite Statement of Plaintiffs' Complaint (Doc. No. 12) and a Motion for Dismissal of Plaintiff Penny Wolfe's Claims (Doc. No. 14), both of which the Plaintiffs opposed (Doc. Nos. 20-21). While the Defendant's motions to dismiss were still pending, Plaintiff filed a Motion to Conditionally Certify a Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b) seeking to conditionally certify a refined version of the ADEA Class (the "Motion to Conditionally Certify"). (Doc. No. 25). Specifically, the Motion to Conditionally Certify seeks to conditionally certify the following class: "current and former employees who were employed by the Charlotte-Mecklenburg Hospital Authority, Atrium Health, Inc., and the Carolinas HealthCare System at any of its United States locations beginning April 23, 2017 to the present who are over age 40 and who directly or indirectly reported to Kerry Bratcher." (*Id.* at 1-2). The Motion to Conditionally Certify includes declarations alleging similar factual allegations as the Complaint.

Soon after, the Magistrate Judge entered the M&R in which he recommended that Defendant's Motion to Dismiss or Strike Class Claims and/or For a More Definite Statement be denied and Defendant's Motion to Dismiss for Failure to State a Claim be granted as to Counts I,

4

II, III, and VII for Plaintiff Penny Wolfe's claims only. Defendant and Wolfe separately filed objections to the M&R. Defendant objects to the Magistrate Judge's recommendation to deny the Motion to Dismiss or Strike Class Claims and Wolfe objects to the Magistrate Judge's recommendation to grant Defendant's Motion to Dismiss Plaintiff Penny Wolfe's claims.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not

5

necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### A. **Defendant's Motion to Dismiss or Strike Class Claims**

The Magistrate Judge recommended the Court deny Defendant's Motion to Dismiss or Strike Class claims concluding at the motion to dismiss stage the Complaint pled facts sufficient to plausibly support the class claims. Defendant objects that (1) Plaintiffs' classes are unascertainable, (2) Plaintiffs' classes lack commonality, (3) Plaintiffs are inadequate representatives for the pled classes, and (4) Plaintiffs failed to plead a similarly situated ADEA Class.

As an initial matter, Plaintiffs argue the Court should not consider Defendant's objections under de novo review because Defendant's objections are general and conclusory and cite cases based on standards applicable at class certification. (Doc. No. 33 at 3). The Court finds this argument unavailing. Defendant's objections clearly set forth specific objections to the M&R which will be reviewed by this Court de novo. After de novo review, the Court concludes that

6

Defendants Motion to Dismiss or Strike Class Claims will be denied.

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). To fall within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23 of the Federal Rules of Civil Procedure. *Id.* This rule requires a two-part test for certifying a class.

First, the plaintiff must establish the four requirements under Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively." *Farrar & Farrar Dairy, Inc.*, 254 F.R.D. 68, 71 (E.D.N.C. 2008). The commonality prerequisite requires a plaintiff to show that the class members share both a common contention and a common injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–350 (2011). A common contention for example may be "the assertion of discriminatory bias on the part of the same supervisor." *Id.* at 350. A class' common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The adequacy prerequisite is used to "uncover conflicts of interest between named parties and the class they seek to represent." *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019). It requires class representatives to be part of the class and "possess the same interest and suffer the

7

same injury as the class members." *Id.* Similarly, as discussed in detail in Part III.B., certification of a FLSA collective action requires members to be "similarly situated," which is initially a "fairly lenient" standard. *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011).

Second, if a plaintiff meets all of the requirements of Rule (23)(a), the plaintiff must show that the putative class also fits into one of the three categories enumerated in Rule 23(b). Fed. R. Civ. P. 23(b). A determination under Rule 23(b) is unnecessary unless each of the prerequisites is met under Rule 23(a). *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 n.3 (4th Cir. 1998).

In addition, the Fourth Circuit has recognized that "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" sometimes described as the "ascertainability requirement." *Adair*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). Under this requirement, "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* If "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.*; *Crosby v. Social Security Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (concluding the "standard 'within a reasonable time' makes class members impossible to identify prior to individualized fact-finding and litigation" and class was not ascertainable).

A fail-safe class is one that "is defined so that whether a person qualifies as a member [of the class] depends on whether the person has a valid claim." *Adair*, 764 F.3d at 360 n.9 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)); *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). "Although the Supreme Court has not addressed the fail-safe question, nearly every circuit court of appeals to address the question considers fail-safe classes

8

improper." *Bigelow*, 2020 WL 5078770, at *4 (collecting cases).  These fail-safe classes are "prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Orduno*, 932 F.3d at 716 (quotations omitted); *Messner*, 669 F.3d at 825.  "Because a fail-safe class requires a court to inquire into the merits of the underlying case to identify the members of the class, fail-safe class definitions" violate the ascertainability requirements. *Bigelow*, 2020 WL 5078770, at *4.  Courts recognize that "the fail-safe problem is more of an art than a science . . . and often should be solved by refining the class definition rather than flatly denying class certification on that basis. *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012).

While plaintiffs have the burden of proving class certification, courts generally analyze a pre-discovery challenge to class certification under the standard of review for Rule 12(b)(6) motions to dismiss. *Bigelow v. Syneos Health, LLC*, No. 5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020).  "A motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Id.* (quotations omitted).

Here, Plaintiffs' Complaint defines the following classes:

- <u>ADEA Class</u>:  All persons who were or are employed by Atrium and who were discriminated against, harassed and/or retaliated against on the basis of age.

- <u>Title VII Class</u>: All persons who were or are employed by Atrium and who were discriminated against, harassed and/or retaliated against on the basis of race.

- <u>Wrongful Discharge Class</u>: Former employees of Atrium who were terminated in violation of North Carolina public policy.

The majority of cases addressing the Rule 23 arguments raised by Defendant arise during

9

the class certification stage where Plaintiffs have a higher standard to meet. While the Plaintiffs classes as defined in the Complaint are broad and may present fail-safe or commonality issues at the certification stage, at the motion to dismiss stage the Court must consider whether the Complaint alleges sufficient facts by which the Plaintiffs could possibly make out a certifiable class. The Court agrees with the Magistrate Judge that Plaintiffs have pled sufficient facts from which the classes could plausibly be certified, and dismissal of the class claims is inappropriate under the motion to dismiss standard. The Complaint sets forth numerous factual allegations to support claims against Defendant of discrimination, harassment, and retaliation under the ADEA and Title VII, and a violation of NCEEPA, including that employees of the Defendant reported Bratcher's behavior to Directors of Nursing and Human Resources, but their concerns were not addressed. For the same reasons, the Court concludes at this stage the Plaintiffs appear to be adequate class representatives. At the certification stage, the Plaintiffs or the Court can refine the classes as necessary to bring them within the requirements of Rule 23, if appropriate.

Further, Defendant's argument that Plaintiffs' ADEA Class should be dismissed because they cannot meet the similarly situated standard required for certification is unavailing. Plaintiffs have pled sufficient facts under the fairly lenient FLSA conditional certification standard from which Plaintiffs could narrowly craft a "similarly situated" ADEA class. Indeed, as discussed below, Plaintiffs have crafted a narrower ADEA class that they seek to conditionally certify.

Therefore, under the motion to dismiss standard, Plaintiffs have pled facts from which they could plausibly make out certifiable classes and Defendant's motion to dismiss the class claims will be denied.

B. **Plaintiff's Motion to Conditionally Certify the ADEA Collective Action**

After Defendant filed its Motion to Dismiss, Plaintiffs filed a Motion to Conditionally

Certify a Collective Action under section 216(b), seeking to conditionally certify a more narrowly crafted ADEA Class. (Doc. No. 25). Specifically, Plaintiffs Williams, Napier, and Wolfe seek to certify the following opt-in class:

> All current and former employees who are or have been, at any time from April 23, 2017 to the present, employed by The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, Inc. f/k/a Carolinas HealthCare System who are over age 40 and who directly or indirectly reported to Kerry Bratcher.

The FLSA, 29 U.S.C. § 201 et seq., "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). It allows a plaintiff alleging a violation of the statute to bring suit on his own behalf or on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Pursuant to § 626(b) of the ADEA, claims may be brought as collective actions under § 216 of the FLSA. Section 216(b) of the FLSA expressly provides for the procedure for collective actions as follows:

> An action to recover the liability prescribed [under the FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Thus, there are two general requirements for the certification of a FLSA collective action: (1) the members of the proposed class must be "similarly situated," and (2) the class members must "opt-in" by filing their consent to suit. *Id.*; *see also Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011).

The term "similarly situated" is not defined in the FLSA; however, federal district courts in the Fourth Circuit typically follow a two-step approach when deciding whether the named plaintiffs are similarly situated to potential plaintiffs for the purposes of certifying the collective action. *See, e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 566 (D. Md. 2012); *Romero*,

796 F.Supp.2d at 705; *Choimbol v. Fairfield Resorts, Inc.*, 475 F.Supp.2d 557, 562–63 (E.D. Va. 2006).

At the first stage, the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court. *Romero*, 796 F. Supp. 2d at 705. "Consistent with the underlying purpose of the FLSA's collective action procedure, this initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence.'" *Id.* (quoting *Choimbol*, 475 F. Supp. 2d at 562). It "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Romero*, 796 F. Supp. 2d at 705. The primary focus in this inquiry is whether the potential plaintiffs are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *De Luna–Guerrero v. The North Carolina Grower's Assoc.,* 338 F. Supp. 2d 649, 654 (E.D.N.C.2004) (quoting Ellen C. Kearns, *The Fair Labor Standards Act*, § 18.IV.D.3, at 1167 (1999)). During the first stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Adams v. Citicorp. Credit Srvs, Inc.*, 93 F. Supp. 3d 441, 454 (M.D.N.C. 2015) (concluding conditional certification was appropriate based on evidence that proposed class was similarly situated based on information in named plaintiffs' declarations in support of motion for conditional certification).

Several courts have reasoned that "conditional certification is not really a certification. It is actually the district court's exercise of its discretionary power, upheld in *Hoffmann–La Roche* . . . to facilitate the sending of notice to potential class members, and it is neither necessary nor sufficient for the existence of a representative action under the FLSA." *Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527, 536 (3d Cir. 2012). Once conditionally certified, the court may authorize plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right

to opt-in. *Romero*, 796 F. Supp. 2d at 705.

After discovery is virtually complete, and if the defendant files a motion for decertification, the court proceeds to stage two. *Choimbol*, 475 F. Supp. 2d at 563. At this stage of the litigation, courts apply a heightened, more fact-specific standard to the "similarly situated" analysis. *Id.* Once plaintiffs establish the burden of proving that they are "similarly situated," the collective action may proceed to trial. *Id.* Otherwise, if the court determines that the plaintiffs are not "similarly situated," the class is decertified. *Id.* The original plaintiffs may then proceed on their individual claims. *Id.*

1. Conditional Certification

Plaintiffs Williams, Napier, and Wolfe seek conditional certification of a collective action against Defendant under the ADEA. As discussed below in Part III.C., because the Court is adopting the Magistrate Judge's recommendation to dismiss Wolfe's claims, with leave to amend the Complaint, it will deny the Motion for Conditional Certification without prejudice to the extent it requests Wolfe as a representative of the ADEA class. The Court concludes Plaintiffs Napier and Williams have made a sufficient showing, at the first stage, to warrant conditional certification. The Complaint and declarations submitted describe factual allegations of an alleged policy or plan by Bratcher resulting in adverse employment decisions, harassment, and/or retaliation of employees based on their age, and that the alleged age bias was reported on multiple occasions to, but not addressed by, Defendant's Human Resources department.

Defendant argues the proposed class is not similarly situated because members were allegedly discriminated against in different ways, with different adverse employment decisions, that will each require individualized determinations by the Court, and that there are insufficient putative class members for a class. However, at the first stage, the Court is determining whether

13

certain of the Defendant's employees were allegedly subject to a common policy or plan which may have resulted in violations of the ADEA. Plaintiffs have made a modest factual showing that the putative plaintiffs may have been subject to an alleged policy or plan resulting in violations of the ADEA by the same supervisor, which was reported to, and not addressed by, Defendant's Human Resources.[1] The proper inquiry at this stage is simply "whether plaintiffs are similarly situated with respect to their allegations that the law has been violated." *Creely*, 789 F. Supp. 2d at 840 (quotation omitted).

Therefore, the Court will conditionally certify Plaintiffs' ADEA class modified as follows:

> All current and former employees of The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, Inc. f/k/a Carolinas HealthCare System, employed at any time from April 23, 2017 to the present, that directly or indirectly reported to Kerry Bratcher, and were over age 40 when they reported to Bratcher.

This conditional certification is without prejudice to Defendant later filing a motion to decertify the ADEA class to consider its similarly situated and manageability arguments under a more stringent inquiry, as it deems appropriate. *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296 (W.D.N.C. 2013).

  2. Notice

Plaintiffs further request the Court to (1) approve their proposed notice form; (2) order Defendant to produce to Plaintiffs' counsel within seven days "a computer-readable data file containing the names, addresses, email addresses, telephone numbers, dates of employment, social security numbers and dates of birth" for putative class members; and (3) approve processes related

---

[1] Defendant objects to the use of hearsay contained in the declarations; however, courts in this district have concluded it is appropriate to consider hearsay based on personal knowledge at the conditional certification stage. *Clark v. Williamson*, No. 1:16cv1413, 2018 WL 1626305, at *3 (M.D.N.C. Mar. 30, 2018); *McCoy v. RP, Inc.*, No. 2:14-cv-3171-PMD, 2015 WL 6157306, at *8 (D.S.C. Oct. 19, 2015) (collecting cases).

14

to notice to putative class members.

Defendant objects to the notice form submitted by Plaintiffs and requests the opportunity to meet and confer with Plaintiffs or submit a proposed notice for the Court to also consider. The Defendant also objects to providing certain employee information requested by Plaintiffs and the notice processes proposed by Plaintiffs. The Court will require the parties to meet and confer regarding the terms of the notice and process for providing notice. *Adams v. Citicorp. Credit Srvs, Inc.*, 93 F. Supp. 3d 441, 454 (M.D.N.C. 2015). However, absent Plaintiffs showing a special reason for requesting telephone numbers, Social Security numbers, and dates of birth, and in an effort to protect the privacy of potential opt-in plaintiffs, the Court will deny Plaintiffs' request for telephone numbers, Social Security numbers, and dates of birth. *See Hathaway v. Smallcakes Steele Creek, LLC*, No. 3:21-CV-00290-FDW-DSC, 2021 WL 4073297 (W.D.N.C. Sept. 7, 2021); *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 772 (D.S.C. 2017).

C. **Defendant's Motion to Dismiss Plaintiff Wolfe's Individual Claims**

Defendant also filed a Motion to Dismiss Plaintiff Wolfe's Individual Claims for discrimination, harassment, and retaliation under the ADEA, and for wrongful discharge under the NCEEPA. (Doc. No. 14). The Magistrate Judge recommended dismissing Wolfe's individual claims for failure to plead sufficient factual allegations. (Doc. No. 29). Plaintiff Wolfe objects to the Magistrate Judge's recommendation to dismiss her individual claims arguing that the Magistrate Judge overlooked direct evidence of each claim alleged in the Complaint.

The ADEA prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to compensation, terms, condition, or privileges of employment because of the employee's age. *Arthur v. Pet Dairy*, 593 Fed. App'x 211, 216 (4th Cir. 2015). "Age must be the 'but-for' cause of the employer's action for the action to violate the

ADEA." *Fisher v. Winston-Salem Police Dep't*, 28 F. Supp. 3d 526, 529 (M.D.N.C. 2014) (quoting *Buchhagen v. ICF Intern., Inc.*, 545 F. App'x 217, 220 (4th Cir. 2013)).

Claims for unlawful employment actions may be proved by direct evidence of discriminatory animus or by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 807 (1973). *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *Arthur*, 593 Fed. App'x at 216. Direct evidence is "evidence that the employer 'announced, admitted, or otherwise unmistakably indicated that the forbidden consideration was a determining factor.'" *Gaines v. McDonald*, 152 F. Supp. 3d 464, 470 (M.D.N.C. 2015) (quoting *Stover v. Lincoln Publ'g, Inc.*, 73 F. 3d 358 (4th Cir. 1995)). "If believed, direct evidence would prove the existence of a fact . . . without any inference or presumptions." *Id.* (quotations omitted). Derogatory comments are direct evidence of age discrimination when they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Arthur*, 593 Fed. App'x at 219 (quotations omitted).

Under the three-step *McDonnell Douglas* framework, first the plaintiff must establish a presumption of discrimination by making out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Arthur*, 593 Fed. App'x at 216 ("An ADEA plaintiff may establish a presumption of discrimination by making out a prima facie case of age discrimination according to *McDonnell Douglas Corp. v. Green* and its descendants."). Next, if the plaintiff succeeds in establishing a prima facie case then the burden shifts to the defendant to provide some legitimate nondiscriminatory reason for its employment decision. *Gaines v. McDonald*, 152 F. Supp. 3d 464, 471 (M.D.N.C. 2015). Last, if the employer provides a

16

nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to rebut the employer's reasons by demonstrating they were pretextual. *Id.*

A plaintiff must show the following elements for a prima facie discrimination claim under the ADEA: (1) the plaintiff was a member of the protected class (i.e., at least 40 years of age), (2) the plaintiff suffered an adverse employment action, (3) at the time of the adverse employment action the plaintiff was performing her job duties to her employer's legitimate expectations, and (4) the position remained open or she was replaced by a substantially younger person. *Ruff v. Target Stores, Inc.*, 226 Fed. App'x 294, 300-01 (4th Cir. 2007). Additionally, to state a constructive discharge claim, a plaintiff must plausibly allege that (1) an employer acted deliberately to induce resignation, and (2) a reasonable person in the employee's position would have "felt compelled to resign." *Boney v. Trustees of Cape Fear Comm. College*, 366 F. Supp. 3d 756, 763 (E.D.N.C. 2019) (citing *Burns v. AFF-McQuay, Inc.*, 96 F.3d 728, 733-34 (4th Cir. 1996)). "The working conditions must be so intolerable that a reasonable person would have felt compelled to resign" and "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions do not constitute objectively intolerable conditions." *Id.* (internal quotations and citations omitted).

To state a hostile work environment claim under the ADEA, a plaintiff must allege that "(1) she experienced unwelcome harassment; (2) the harassment was based on her . . . age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). To establish a prima facie case of unlawful retaliation under the ADEA, a plaintiff is required to show that: (1) she engaged in protected activity, (2) an adverse employment action was taken against her by the defendant;

17

and (3) there was a causal connection between the protected activity and the adverse action. *Tuttle v. McHugh*, 457 Fed. App'x 234, 237 (4th Cir. 2011). "Protected activity under the statute includes making a charge of discrimination to the Equal Employment Opportunity Commission." *Id.*

The Court agrees that Wolfe failed to sufficiently plead a claim for age discrimination or harassment under the ADEA. The direct evidence alleged in the Complaint that "Bratcher spoke to Penny Wolfe about stepping down as a Clinical Supervisor" and "Bratcher told a younger nurse that she was currently working on getting rid of Penny Wolfe" do not tie Bratcher's actions to Wolfe's age. (Doc. 1 No. at ¶¶ 32, 41). Similarly, the allegations that "[Bratcher] was targeting Wolfe" and that "Wolfe was constructively discharged when she was forced into early retirement due to Bratcher's harassment and targeting" are merely conclusory. *Id.* at ¶¶ 41, 49. Wolfe argues that the Magistrate Judge overlooked additional general comments related to age but not directed at Wolfe to support her claims. However, the Complaint does not allege Wolfe overheard, was informed of, or otherwise aware of the various comments made by Bratcher regarding age to create an environment of harassment or to force her to resign. The Complaint is devoid of factual, rather than mere conclusory allegations, to support a claim that Wolfe was constructively discharged or that she experienced "severe or pervasive" harassment based on her age.

The Court also agrees that Wolfe's retaliation claim fails because she does not sufficiently allege factual allegations that she engaged in a protected activity for which she was retaliated. She did not file her EEOC charge until July 16, 2019, after her retirement in February 2019, such that she could not have been retaliated against for filing her EEOC charge. Additionally, the Court agrees with the Magistrate Judge that the Complaint fails to allege how Wolfe otherwise engaged in protected activity or casual connection other than mere conclusory allegations in the "Counts" section of the Complaint with no factual allegations to support the conclusions.

18

Case 3:20-cv-00242-RJC-DSC   Document 38   Filed 12/07/21   Page 18 of 20

Wolfe's NCEEPA claim for wrongful discharge fails to state a claim which relies on the same allegations as the ADEA claims. Generally, if a "plaintiff's ADEA claim fails, his [state] law claim for wrongful discharge on the basis of unlawful age discrimination also fails." *Moser v. Driller's Serv., Inc*., 988 F. Supp. 2d 559, 565 (W.D.N.C. 2013). For the reasons stated above, the Complaint does not allege facts sufficient to allege a claim for age discrimination, harassment, or retaliation under the ADEA as to Wolfe. Her claim for wrongful discharge under the NCEEPA must also be dismissed.

Wolfe requested leave to amend the Complaint in the event the Court agreed with the Magistrate Judge's recommendation to dismiss her individual claims. Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure courts should "freely give leave when justice so requires." "Absent a showing of undue delay, bad faith, futility, or prejudice to the opposing party, a court should grant a party leave to amend." *Hicks v. Transit Management of Asheville, Inc.*, No. 1:11cv94, 2011 WL 5335567, at *1 (W.D.N.C. Nov. 7, 2011). After reviewing the pleadings in this case, including Wolfe's declaration in support of the Motion for Conditional Certification, granting leave to amend the Complaint will not be futile, cause undue delay, or otherwise prejudice the Defendant. The Court will grant Wolfe leave to amend the Complaint within thirty (30) days of the entry of this Order.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. The Court **ADOPTS** the M&R (Doc. No. 29);

2. Defendant's Motion to Dismiss/Strike Class Claims and/or For More Definite Statement of Plaintiffs' Complaint (Doc. No. 12) is **DENIED**;

3. Defendant's Motion for Dismissal of Plaintiff Penny Wolfe's Claims (Doc. No. 14)

is **GRANTED** as to Counts I, II, III, and VII for Plaintiff Penny Wolfe's individual claims only;

4. Plaintiffs' Motion to Conditionally Certify a Collective Action And Facilitate Notice Pursuant to 29 U.S.C. § 216(b) (Doc. No. 25) is **GRANTED** in part. Specifically, the Court conditionally certifies the following FLSA collective as to Plaintiffs Napier and Williams:

   > All current and former employees of The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health, Inc. f/k/a Carolinas HealthCare System, employed at any time from April 23, 2017 to the present, that directly or indirectly reported to Kerry Bratcher, and were over age 40 when they reported to Bratcher.

5. Within **ten (10) days** from the entry of this Order, counsel are directed to meet and confer regarding form of notice, opt-in forms, and processes for notice. **Within thirty (30) days** from the entry of this Order, the parties shall submit to the Court a proposed notice form, opt-in forms, and processes for notice to conditional collective action members for approval by the Court, including highlighting of any disagreements between the parties requiring further decision from the Court; and

6. Plaintiffs shall have **thirty (30) days** from the entry of this Order to file an amended complaint specifically as to Plaintiff Wolfe's individual claims only.

Signed: December 7, 2021

Robert J. Conrad, Jr.
United States District Judge